WYLIE CHANEY v. THE STATE.

No. 14694. Delivered January 13, 1932.
Rehearing Denied March 9, 1932.

The opinion states the case.

L. D. *Hartwell* and E. L. *Hartwell,* both of Greenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for two years.

The smokehouse of H. M. Willingham was burglarized at night and a quantity of meat and lard taken therefrom. The following morning Mr. Willingham and an officer discovered three sets of tracks around the smokehouse. The officer and Mr. Willingham were able to follow these tracks to the home of George Arbuckle. Upon Arbuckle's premises they found the meat and lard, some of which was buried about fifty yards from Arbuckle's house. Mr. Willingham identified the meat and lard as being the property taken from the smokehouse. Witnesses for the state testified that appellant was living in George Arbuckle's house on the occasion the burglary was committed. Harold Arbuckle, an accomplice witness, testified that he, appellant and George Arbuckle went to the smokehouse at eleven o'clock at night, broke the lock and stole the meat and lard. He detailed their movement and told where they buried the stolen property. State's witness Jim Arbuckle, who was a half-brother of George Arbuckle, and an uncle of Harold Arbuckle, the accomplice witness, testified, in substance, that he talked to appellant and George

Arbuckle about their connection with the offense in question. He said that appellant stated to him that he was guilty. The witness said further that he suggested that if he were in their place he would plead guilty and ask for mercy. He testified further that appellant said that he was guilty, but that he would rather have his throat cut than plead guilty. Again, the witness testified that appellant and George Arbuckle agreed in his presence that they would plead guilty when their cases were reached. The state offered in evidence a letter addressed to George Arbuckle, one of the participants in the commission of the offense, written by appellant after the offense had been committed. This letter read as follows: "Dear friend. Will drop you a few lines. Listen old pal, you know what we decided on while I was there. Listen George, I can't do that, we haven't got a chance that way and we might have the other way so I am writing to let you know so do as you please but let me know at once by mail please. I must close, as ever a friend, Wylie Chaney. Sent by mail to Alba, Texas, route 3."

Appellant did not testify and introduced no witnesses.

Appellant presented his application for a continuance wherein he stated that he was not ready for trial on account of the absence of his wife. It was averred in the application that his wife would testify, if present, that appellant was at home with her on the night the burglary was committed and that he could not have been present when the smokehouse was entered. It was further averred that the witness was expected to give birth to a child in the near future, and that she was then confined to her bed, and that it would endanger her health to appear and testify. Attached to the application was the certificate of a physician to the effect that he was treating appellant's wife at her home and that she would be unable to attend court for several days on account of the fact that she was expecting to be confined. It was further stated in the certificate that the presence of the witness in court would endanger her health. It was not stated when it was expected the witness would be confined. The state controverted the application on the ground that the witness was able to attend court. The court heard evidence before refusing the continuance. A deputy sheriff testified that he had had a conversation with the witness the day the case was called for trial. We quote the testimony of this witness as follows: "I had a conversation with her and asked her if she thought she was able to come to court and she said she guessed so, she was a little sick a day or two ago but was feeling all right now; she asked me if I wanted her to come back with me and I told her I didn't; that was about four or four thirty yesterday afternoon, April 13th. I told her if we had to have her we would send after her or somebody would come after her and she said all right."

The witness testified further that appellant's wife was sitting in the window when he got to her home but that she got up and sat on the edge

of the bed when he entered the house. He said he went to the office of the doctor who certified that the witness was sick, but did not find him in. Appellant testified on the hearing that his wife was pregnant and that she had told him she was threatened with a miscarriage. He said she was nervous and had been suffering and that he had had the physician who certified that she was ill to treat her. He testified that he did not believe she was able to come to court. Appellant did not say when his wife expected to be confined. A witness for the state testified that appellant's wife told her that she expected to be confined in approximately three months. Two other witnesses for appellant testified that during the presence of the witness in court two weeks previous to the present trial she had told them that she was ill and threatened with miscarriage. Appellant did not produce the physician whose certificate was attached to the motion for new trial and his testimony was not before the court. There was no affidavit on the part of appellant's wife showing whether she was unable to attend court and describing her physical condition. Although appellant predicated his motion for new trial in part upon the action of the court in overruling his application for continuance, he did not append to the motion the affidavit of his wife showing the facts she would testify to if present as a witness. It is observed that the certificate of the physician did not state when appellant's wife was to be confined.

We are unable to escape the conclusion that the testimony heard by the court failed to show that the condition of appellant's wife was of such a serious nature as to prevent her from attending the trial of the case. On the contrary, the testimony, in our opinion, warranted a finding that she could have appeared without endangering her life or injuring her health. Other than the testimony of appellant himself there was nothing to show that the witness was ill at the time of the trial. The testimony of the deputy sheriff as to the statement made to him by the witness was to the effect that she said she had been sick but was then feeling all right, and was ready to go to the court house with him. Notwithstanding he heard the officer testify as heretofore outlined, appellant made no effort to produce the affidavit of his wife to the effect that she was ill, and failed to bring before the court the physician who had been attending her. The opinion is expressed that appellant failed to show that the witness was ill at the time of the trial and that her illness was of such a serious character as to prevent her attendance. Texas Jurisprudence, vol. 9, page 819; Shipman v. State, 100 Texas Crim. Rep., 93, 271 S. W., 901; Newman v. State, 99 Texas Crim. Rep., 323, 269 S. W., 87. It follows that we are constrained to hold that the trial court did not abuse his discretion in overruling the application for continuance.

Bill of exception No. 4 relates to appellant's objection to the testimony of state's witness Willingham touching tracks leading from the

smokehouse to George Arbuckle's home. It appears from the bill that after describing the location of the tracks the witness was permitted to testify, over appellant's objection, that the tracks found in the pasture looked like tracks that were in the vicinity of the smokehouse. It is unnecessary to determine whether the court fell into error in overruling the objection. State's witness Graham testified, without objection, that after crossing the pasture they took up the same tracks they had found at the smokehouse. This witness further testified, on cross-examination by appellant's counsel, as follows: "Yes, I know what men made the tracks I testified about, they were made by Chaney (appellant) and the Arbuckle boys, it fit their tracks; the tracks corresponded with their shoes and as far as I know they were made by the three parties."

If the testimony complained of was erroneously received, the fact that another witness, without objection having been interposed by appellant, gave the same testimony would preclude a reversal of the judgment. The erroneous admission of testimony does not call for a reversal where the same fact is proven by other testimony not objected to. Enix v. State, 112 Texas Crim. Rep., 376, 16 S. W. (2d) 818; Pryor v. State, 88 Texas Crim. Rep., 211, 225 S. W., 374; Burgess v. State, 88 Texas Crim. Rep., 146, 225 S. W., 182.

Bill of Exception No. 5 presents the following occurrence: Harold Arbuckle, the accomplice witness, testified that, in an effort to persuade him and George Arbuckle to aid him in burglarizing the smokehouse, appellant stated to him that there was no use in being afraid as Mr. Willingham had missed some meat the year before and had not made a search for it or tried to do anything about it. Appellant objected to the statement on the ground that it involved a separate and distinct offense and did not prove or tend to prove any allegation in the indictment. There are recognized exceptions to the rule that proof of other offenses is inadmissible. Enix v. State, 112 Texas Crim. Rep., 376, 16 S. W. (2d) 818. Other than the statement of the grounds of objection in the bill there is nothing to show that the testimony was not admissible under one of the recognized exceptions to the rule to which reference has been made. The statement of the grounds of objection in the bill is not a certificate that the facts which form the basis of the objection are true. The bill failing to show otherwise, we must indulge the presumption that the ruling of the trial court was correct. Enix v. State, supra. If the testimony was inadmissible, under the record, we fail to see how its reception harmed appellant. The testimony showing appellant's guilt was plain and uncontroverted. The minimum penalty was assessed. McLendon v. State, 101 Texas Crim. Rep., 663, 276 S. W., 431; Thomas v. State, 109 Texas Crim. Rep., 249, 4 S. W. (2d) 39.

As disclosed by bill of exception No. 7, objection was interposed by appellant to the testimony of Sylvia Arbuckle to the effect that the signa-

ture on the letter, as well as the letter, hereinbefore set forth, was in the handwriting of appellant. The ground of objection was that it was not shown by legal and competent evidence that the witness was qualified to state whether the letter was written by appellant and that there was no evidence that she knew where it was mailed or that appellant mailed it. It is the rule that where the witness shows himself to be familiar with the handwriting of one whose signature is under investigation, he is permitted to give his opinion relative thereto regardless of whether or not he be an expert in handwriting, such evidence being regarded as in the nature of primary evidence. Garner v. State, 100 Texas Crim. Rep., 626, 272 S. W., 167, 169, and authorities cited.

Touching the predicate for the introduction of the letter, the testimony of the witness was as follows: "I know the defendant Wylie Chaney, and have known him a year or more. I saw him at our home on the 16th day of March and he left on the 17th. I have seen his handwriting about five times or more; the occasion of my seeing his handwriting, he sent letters there to George Arbuckle and to my father and to his wife; George nor my father can read and I always read the letters to them. Wylie Chaney's wife also received letters there and I saw some of them; the letters came from Greenville according to the postmark on them; from the number of times I have seen his handwriting, I knew the handwriting of Wylie Chaney; about three or four days after this defendant had been to my home on the 16th day of March a letter was received there, the handwriting which I saw and it was Wylie Chaney's handwriting, this is the envelope and the letter received."

In Garner v. State, supra, a predicate substantially the same as that shown in the instant case was held sufficient to warrant the receipt of testimony that the signature of the alleged forged check was in the handwriting of the accused. In that case the witness testified that he had known the accused nine years and was familiar with his signature. He said the signature on the forged check was that of the accused. Further, the witness testified: "If you want to know why I know, I have seen notes from Jim (the accused) written with a pencil like this about some timber and different things; timber mostly. I didn't see him write that but I base my opinion on the fact that I am acquainted with his signature." In holding that the predicate in Garner's case was sufficient, this court, in an opinion written by Judge Hawkins, quoted from Haynie v. State, 2 Texas App., 168, as follows: "All that the rule of law contended for requires is that a witness who is called upon to prove handwriting shall be able to show that he has had such means of knowledge as to furnish a reasonable presumption that he is qualified to form an opinion upon the subject. And the opportunity of acquiring such knowledge, mentioned in the books on evidence, such as having seen the party write, having corresponded with him or seen writing acknowledged by

him to be genuine, are only illustrative of the principle, and not to be understood as the only means whereby such knowledge may be acquired. If other means of knowledge, in the view of reason and common sense, will equally afford it, there can be no reason why the statement of such means of information shall not be held sufficient preliminary to an examination-in-chief in relation to the writing."

Again, in Garner's case, Judge Hawkins quoted from Wharton's Criminal Evidence, vol. 2, sec. 553, as follows: "A witness called to testify as to handwriting, and who establishes a prima facie case of acquaintance with the handwriting of the person whose signature is in dispute, will be admitted by the court to testify, though before his admission he may be cross-examined as to his opportunities, so that his qualifications may be tested by the court. * * *.'"

In referring to the foregoing quotations, Judge Hawkins used language as follows: "Applying this test to the objection made to Love's testimony it shows the court was not in error in receiving it. The evidence aside from this witness shows that appellant's given name was 'Jim'; that he was engaged in business connected with timber in some way. Love testified that he was familiar with appellant's signature. He refers to him as 'Jim'. He says the reason he knows that the 'Garner' signed on the alleged forged check was in appellant's handwriting was because he had seen notes from 'Jim', most of them written regarding timber. We think unquestionably this establishes a prima facie case of acquaintance on the part of the witness with the handwriting of appellant."

See also Kleck v. State, 97 Texas Crim. Rep., 423, 263 S.. W., 316.

Giving effect to the principle announced in Garner's case and the authorities therein cited, we think the court was not in error in receiving the letter.

The court charged the jury that Harold Arbuckle was an accomplice witness. Appellant objected to the charge on the ground that the term "accomplice" was not defined. When the court charges the jury directly that a witness is an accomplice it is not necessary that the term "accomplice" should be defined in the charge. Branch's Annotated Penal Code, sec. 713; Winfield v. State, 44 Texas Crim. Rep., 476, 72 S. W., 182.

Appellant objected to the charge of the court for its failure to submit an instruction on the law of circumstantial evidence. The accomplice witness testified that he and appellant broke the door of the smokehouse, entered and took therefrom the injured party's property. Again, Jim Arbuckle testified that appellant stated to him that he (appellant) burglarized the smokehouse. The evidence being direct that appellant committed the offense, the court was not required to charge on circumstantial evidence. Branch's Annotated Penal Code, sec. 1874; Tune v. State, 49 Texas Crim. Rep., 445, 448, 94 S. W., 231.

An examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.